**CIENEGA GARDENS, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**Chancellor Manor, et al., Plaintiffs,**

v.

**United States, Defendant.**

**Nos. 94–1C, 98–39–C.**

United States Court of Federal Claims.

Aug. 31, 2004.

Everett C. Johnson, Jr., Latham & Watkins, Washington, D.C., for plaintiffs in Cienega Gardens. Of counsel were Susan Azad, Richard P. Bress, and Heather M. McPhee, Latham & Watkins, Washington, D.C.

Jeff H. Eckland, Eckland & Blando, Minneapolis, Minnesota, for plaintiffs in Chancellor Manor.

Kenneth M. Dintzer, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were Assistant Attorney General Peter D. Keisler, David M. Cohen, Director, and Brian M. Simkin, Assistant Director, Commercial Litigation Branch, and Cristina Ashworth, Sean Dunn, David Harrington, Tim McIlmail, and Kenneth D. Woodrow, Trial Attorneys, Commercial Litigation Branch, Washington, D.C.

## ORDER

LETTOW, Judge.

These takings cases are before the court on remand from the Court of Appeals for the Federal Circuit. *See Cienega Gardens v. United States,* 331 F.3d 1319 (Fed.Cir.2003) ("*Cienega VIII* "); *Chancellor Manor v. United States,* 331 F.3d 891 (Fed.Cir.2003). *Cienega* and *Chancellor Manor* involve a "virtually identical set of facts and agreements." *Chancellor Manor,* 331 F.3d at 899. Pending before the court is the court's suggestion that *Cienega* be consolidated with *Chancellor Manor* for the purpose of trial. The suggestion was first broached with the parties over eight months ago, in January 2004, and it has been the subject of discussion, briefing, and consideration since that time. A hearing on the matter was held on August 17, 2004, to address lingering questions. This order resolves the consolidation issue, concluding that consolidation for the limited purpose of trial is appropriate such that a consolidated trial can proceed as scheduled beginning in November 2004.

## BACKGROUND

All of the forty-two original plaintiffs in *Cienega* and the three plaintiffs in *Chancellor Manor* were and are owners of low-income housing units that filed suit seeking redress after passage of the Emergency Low Income Housing Preservation Act of 1987, Pub.L. No. 100–242, tit. II, 101 Stat. 1877 (1988) (codified at 12 U.S.C. § 1715*l* note) ("ELIHPA"), and the Low–Income Housing Preservation and Resident Homeownership Act of 1990, Pub.L. No. 101–625, tit. VI, 104 Stat. 4249 (1990) (codified in scattered sections of Title 12 of the U.S.Code, including 12 U.S.C. §§ 4101–4124) ("LIHPRHA"). These Acts nullified plaintiffs' option to prepay their federally subsidized mortgages after twenty years, thus barring them from removing regulatory restrictions on rental and use of their property. *See Cienega VIII,* 331 F.3d at 1323. The passage of the Housing Opportunity Program Extension Act of 1996, Pub.L. No. 104–120, 110 Stat. 834 (March 28, 1996) ("HOPE"), restored the prepayment rights to the owners without requiring HUD approval, provided that the rents were not raised for sixty days after prepayment. These cases thus focus primarily on the interregnum between ELIHPA and LIHPRHA on the one hand and the HOPE Act on the other.

### Cienega

The plaintiffs' original complaint in *Cienega* put forward double-barreled claims, one based on a breach of contract theory and the other on a regulatory takings theory under the Fifth Amendment. *Cienega VIII,* 331 F.3d at 1324. In 1996, Judge Robinson of this court conducted a trial on the breach of contract claims of four model plaintiffs and in 1997 he ruled in favor of those plaintiffs, awarding $3,061,107 in damages. *Cienega Gardens v. United States,* 38 Fed.Cl. 64 (1997) ("*Cienega III* "). On appeal, the Federal Circuit reversed this court's breach of contract judgment, ruling that the plaintiffs lacked privity of contract with the government. *Cienega Gardens v. United States,*

194 F.3d 1231 (Fed.Cir.1998) (*"Cienega IV"*). On remand, Judge Hodges of this court dismissed plaintiffs' takings claims. *Cienega Gardens v. United States*, 46 Fed.Cl. 506 (2000) (*"Cienega V"*). On appeal of that ruling, the Federal Circuit held that the regulatory takings claims were ripe for adjudication and further remanded the matter to this court. *Cienega Gardens v. United States*, 265 F.3d 1237 (Fed.Cir.2001) (*"Cienega VI"*). On the second remand, Judge Hodges granted summary judgment to the government, ruling that the plaintiffs did not have vested property rights and that, if any taking had occurred, it could not have been a compensable taking as a matter of law. *Cienega Gardens v. United States*, No. 94–1C (Fed.Cl. Jan. 8, 2002) (*"Cienega VII"*) (order granting summary judgment).

The Federal Circuit overturned that grant of summary judgment on appeal in *Cienega VIII*, 331 F.3d at 1324. In doing so, the Federal Circuit ruled that the *Cienega* plaintiffs did hold vested property rights and were not legally barred from potential recovery. *Id.* at 1353–55. Additionally, as to the four model plaintiffs, the Court of Appeals held that the record justified the determination that those plaintiffs, whose claims had already been ventilated at trial, had suffered a compensable, temporary, regulatory taking. *Id.* at 1353. The Court of Appeals directed that the original damages judgment entered in *Cienega III* be reinstated for each of the four model plaintiffs. *Id.* Regarding the thirty-eight plaintiffs who were not model plaintiffs, the Federal Circuit held that sufficient evidence did not exist on the record to conduct an analysis of their takings claims under the regulatory takings principles set out in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), and it remanded those claims for development of an appropriate factual record. *Cienega VIII*, 331 F.3d at 1353–54.

On January 29, 2004, following receipt of the mandate and the Federal Circuit's instructions on remand, this court severed the four model plaintiffs from the remaining thirty-eight plaintiffs in *Cienega*. The newly-separate action by the model plaintiffs was styled *Independence Park Apartments, et al. v. United States*, No. 94–1A–C. *See Independence Park Apts. v. United States*, 59 Fed.Cl. 765 (2004) (order resolving a discovery dispute that arose during preparation for retrial of the remanded case).[1] The remaining plaintiffs were then divided into three sets as chosen by the parties based on factual similarities (Sets II (five plaintiffs), III (ten plaintiffs), and IV (23 plaintiffs)). The next set of plaintiffs scheduled to go to trial in *Cienega* is Set II, consisting of Blossom Hill Apartments, Del Amo Gardens, Las Lomas Gardens, Skyline View Apartments, and Cienega Gardens. The properties held by these plaintiffs are all located in California but none are in Los Angeles.[2]

### Chancellor Manor

The plaintiffs in *Chancellor Manor* own apartment buildings located in the Minneapolis, Minnesota area. The mortgages for all three plaintiffs' properties became twenty years old between the passage of the LIHPRHA in 1990 and the enactment of the HOPE Act in 1996. *Chancellor Manor v. United States*, 331 F.3d at 896. In prior proceedings, Senior Judge Lydon of this court granted a motion by the government for summary judgment on both the plaintiffs' contract and takings claims. *Chancellor Manor v. United States*, 51 Fed.Cl. 137 (2001). The Federal Circuit affirmed judgment for the government on the contract claim, holding that the Chancellor Manor plaintiffs were not in privity of contract with the government, but reversed on the takings claim and remanded for a "more searching factual inquiry" into the regulatory takings principles identified in *Penn Central*, having

---

1. Retrial of the takings claims of the model plaintiffs was held in early May 2004, and that case has proceeded to judgment. *See Independence Park Apts. v. United States*, 61 Fed.Cl. 692, 2004 WL 1918718 (2004).

2. The properties of each of the four model plaintiffs whose claims were at issue in the original

trial were located within Los Angeles. Because the City of Los Angeles has a rent control ordinance, the claims by the model plaintiffs raised a set of complex preemption issues that do not arise with respect to the claims of the Set II plaintiffs. *See Independence Park Apts.*, 61 Fed. Cl. at 702–06, 2004 WL 1918718, *9–12.

cited extensively to the analysis of those principles set out in *Cienega VIII. Chancellor Manor*, 331 F.3d at 906.

## DISCUSSION

*Cienega* and *Chancellor Manor* were logical candidates for consolidation immediately upon the Federal Circuit's remand orders issued in interrelated fashion on the same day last year. After the mandates in the cases had issued, this court called for status reports from the parties and held status conferences on January 28, 2004, at which arrangements were made for further discovery and other proceedings in preparation for trial of the remanded cases. At the court's behest, possible consolidation of the cases also was addressed. Among other things, the *Cienega* case was subdivided into more manageable sets of plaintiffs, the model plaintiffs were identified as Set I and their claims were severed into a separate proceeding, and identical schedules for discovery and pretrial proceedings were established for Set II in *Cienega* and for *Chancellor Manor*. No decision regarding consolidation was made at that time. Rather, the parties to the cases were directed to submit memoranda on consolidation by August 6, 2004, following completion of discovery. Upon receipt of these memoranda, the court requested that the parties address consolidation and other preliminary pretrial matters at a hearing held on August 17, 2004.

The question of consolidation is ripe for decision. *Cienega* and *Chancellor Manor* continue to be candidates for consolidation because they share common legal questions that arise in similar factual scenarios. Misjoinder of the plaintiffs in the initial complaints in each case is also a factor in consolidation. To accord with the requirements of Rule 20(a) of the Rules of the Court of Federal Claims ("RCFC"), each plaintiff in these cases ought to have brought a separate action.[3] *See Franconia Assocs. v. United States*, 61 Fed.Cl. 335, 336–37 (2004) (recognizing a misjoinder under RCFC 20(a) in comparable circumstances, and severing each of the cases of thirty-seven plaintiffs who were not parties to the same transaction or occurrence). In *Franconia*, after severance under RCFC 21, the court then provided for consolidation of the newly severed cases for trial in accord with RCFC 42(a). *See Franconia*, 61 Fed.Cl. at 338. In effect, the court in the instant cases has been undertaking a similar task. It first divided *Cienega* into discrete groups of plaintiffs and now is endeavoring to establish a manageable grouping of similarly situated plaintiffs for trial.

Rule 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." In determining whether consolidation is appropriate, the court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. *Karuk Tribe of California v. United States*, 27 Fed. Cl. 429, 433 (1993) (citing *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y.1987)). The court must consider whether specific risks of prejudice and possible confusion are "overborne by the risk of inconsistent adjudication of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir.1990) (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir.1982)).

---

3. Rule 20(a) provides:

(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or *arising out of the same transaction, occurrence, or series of transactions or occurrences,* and if any question of law or fact common to all these persons will arise in the action. A plaintiff need not be interested in obtaining all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief.

(Emphasis added.)

■ The court has broad discretion to determine whether consolidation is appropriate. *See Johnson*, 899 F.2d at 1284; *Skirvin v. Mesta*, 141 F.2d 668, 672–73 (10th Cir.1944) (longstanding precedent that the trial judge has broad discretion to consolidate). Where common questions of law or fact are involved and consolidation would avoid unnecessary costs, consolidation is encouraged. *Johnson v. Mississippi Valley Barge Line Co.*, 34 F.R.D. 140, 142 (W.D.Pa.1963).

■ Notwithstanding a recognition that the issues in *Cienega* and *Chancellor Manor* very substantially overlap, Hr'g Tr. at 12 (Aug. 17, 2004), the parties have opposed consolidation.[4] Consolidation can be ordered despite opposition by the parties. *See St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir.1983); *Midwest Cmty. Council, Inc. v. Chicago Park Dist.*, 98 F.R.D. 491, 500 (N.D.Ill.1983). Consequently, the court will take the positions of the parties into account in its analysis, but it will not accord the parties' views dispositive weight.

■ The parties do not dispute that the plaintiffs of Set II in *Cienega Gardens* and those in *Chancellor Manor* share common questions of law. The contract claims for both cases have been dismissed. *See Cienega IV*, 194 F.3d 1231; *Chancellor Manor*, 331 F.3d at 893, 898–901. Both cases involve the same claim (that abrogation of plaintiffs' prepayment rights constituted a taking), the same government action (ELIHPA and LIHPRHA), and many of the same defenses (e.g., that plaintiffs' investment backed expectations were unreasonable). Analysis of a regulatory taking in accord with *Penn Central* principles requires a detailed fact-specific inquiry, and the evidence respecting each property will require individual consideration, but the common issues outweigh the individual inquiries in these cases. Such individual issues do not preclude consolidation if the consolidation standard is otherwise met. *See Karuk*, 27 Fed.Cl. at 433.

The parties similarly acknowledge that these cases also share many common issues of fact. Both sets of plaintiffs entered into agreements with lenders regarding the properties in question, in addition to mortgage insurance agreements with HUD that required the plaintiffs to comply with HUD regulations. *See Cienega VIII*, 331 F.3d at 1325; *Chancellor Manor*, 331 F.3d at 893–95. Both sets of plaintiffs allege that their agreements with the lenders included provisions that allowed for prepayment of each housing project's federally insured mortgage after twenty years, after which the plaintiffs could charge market prices for the housing. *Id.* When twenty years had passed, both sets of plaintiffs claimed that ELIHPA and then LIHPRHA prevented them from obtaining release from HUD regulations through prepayment. *Cienega VIII*, 331 F.3d at 1327; *Chancellor Manor*, 331 F.3d at 897. The Federal Circuit's decisions in *Cienega VIII* and *Chancellor Manor* explicitly recognize that these cases follow the same factual pattern. *See Cienega VIII*, 331 F.3d at 1353–55; *Chancellor Manor*, 331 F.3d at 894 n. 1. In this same vein, the government also has indicated that it will use the same expert witness in both cases. Hr'g Tr. at 17 (Jan. 28, 2004) ("[W]e're looking at the same expert. We're going to be tying him up in *Cienega Gardens* as well as *Chancellor Manor*."). This level of commonality has been considered more than adequate to justify consolidation. *See, e.g., Harris v. L & L Wings, Inc.*, 132 F.3d 978, 981 n. 2 (4th Cir.1997) (holding that consolidation is appropriate when cases share the same defendant and the same witnesses, allege the same misconduct, and answer with the same defenses).

The Federal Circuit's recognition of the similarities of these cases is illuminating. *See Cienega VIII*, 331 F.3d at 1324 (referring to *Chancellor Manor* and the model *Cienega* plaintiffs as "similarly situated"); *id.* at 1353–54 (calling for this court to consider the same factors in analyzing *Chancellor Manor* and *Cienega*); *Chancellor Manor*, 331 F.3d

---

4. The government did so notwithstanding the fact that it had claimed similarities between *Cienega* and *Chancellor Manor* as early as 2001, when it filed a Motion for Leave to File Statement of Supplemental Authority and Defendant's Statement of Supplemental Authority in *Cienega*. *See* Motion for Leave to File Statement of Supplemental Authority and Defendant's Statement of Supplemental Authority at 1 (Dec. 4, 2001).

at 894 n. 2 (stating that the documents at issue in *Chancellor* are "the same documents in form and substance as the documents discussed in *Cienega IV*"); *id.* at 899 (noting that the facts in *Chancellor Manor* and *Cienega IV* are "virtually identical").

The parties' objections to consolidation are aimed at a purported lack of efficiency. The government notes that the properties of the plaintiffs in *Cienega* are located in California whereas those of the plaintiffs in *Chancellor Manor* are located in Minnesota. Def.'s Status Report in *Chancellor Manor* at 2 (Aug. 6, 2004). The government also adverts to the circumstance that different general partners are involved and that the plaintiffs have different counsel and have retained different expert witnesses. *Id.* Plaintiffs in *Cienega* and *Chancellor Manor* echo the same concerns. *See* Joint Status Report in *Cienega* at 3 (Aug. 2, 2004); Pls.' Mem. Regarding Consolidation With *Cienega Gardens* in *Chancellor Manor* at 2 (Aug. 4, 2004). *See also* Hr'g Tr. (Aug. 17, 2004) at 18–19 (plaintiffs' concerns are geographical location and desire for court to have a site visit). These impediments are to a large degree ameliorated by the circumstances (1) that plaintiffs in *Cienega* and the government have joined in a request that trial in *Cienega* be held in Washington, D.C. and not in California, (2) all of the witnesses put forward by plaintiffs in *Chancellor Manor* could testify at the outset of trial at a location in Minnesota, whereupon the trial situs could shift to Washington, and (3) the government's expert would only testify once, not twice. As noted at the hearing, the court has no need to hear virtually the same testimony twice from the government's expert witness. Hr'g. Tr. at 11, 23 (Aug. 17, 2004). In addition, the plaintiffs' desire to arrange a visit to properties can be accommodated by conducting a site visit to Minnesota properties at the conclusion of the Minnesota phase of the trial and then separately conducting a visit to California properties at the conclusion of the whole trial.

Because these cases share so many common issues of law and fact, the court's interest in judicial economy is strongly advanced by consolidation for trial. The prejudice to the parties caused by consolidation is minimal. Eight months ago both cases were put on the same pre-trial schedule, so delay is not a factor. The likelihood of confusion or prejudice is also minimal. Each party will be able to focus on evidence respecting each property, just as it would if the cases were not consolidated. Moreover, consolidation would reduce the risk of inconsistent adjudication of common legal and factual issues.

In sum, in light of the common legal issues and the strong factual similarities, the common governmental expert witness, and the minimal delay, confusion, and prejudice that would arise from consolidation, the court has opted to consolidate the cases for trial. Limiting consolidation to trial should address the parties' concerns and yet allow for a more efficient adjudication. The cases are consolidated for a trial to commence on November 8, 2004.[5]

It is so ORDERED.

---

5. Because the cases are being consolidated only for the purposes of trial, in all subsequent filings in the cases made in advance of trial and during the trial itself, the parties shall refer in the caption to both cases, using the style reflected in this order.