**William HYDE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 08–27C.

United States Court of Federal Claims.

Dec. 24, 2008.

William Hyde, appearing pro se, Idaho Falls, Idaho, Plaintiff.

Kirby Wing–Kay Lee, with whom were Gregory G. Katsas, Assistant Attorney General, and John J. Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

1. Plaintiff's complaint represents that he is "doing business as" a company known as Automotive Research Corporation. Compl. at 1. On March 21, 2008, the Court ordered Plaintiff to explain the interest of Automotive Research Corporation in this case and state whether an attorney would appear on behalf of Plaintiff. Mar. 21, 2008 Order. Plaintiff replied that, "Automotive Research Corporation has no interest what

*OPINION AND ORDER*

WHEELER, Judge.

In this *pro se* action, Plaintiff William Hyde[1] seeks damages for the alleged misappropriation of proprietary patent information, trade secrets and invention prototypes by the United States Department of Energy ("DOE") and National Bureau of Standards ("NBS"). This case is before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. For the reasons stated below, Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED, and Plaintiff's complaint shall be DISMISSED with prejudice.

*Background*

On January 15, 2008, Plaintiff, appearing *pro se*, filed a complaint in this Court alleging that the DOE and the NBS, now the National Institute of Science and Technology ("NIST"), misappropriated an invention he submitted to NBS's Energy–Related Inventions Program ("ERIP").[2] Compl. at 2. Plaintiff, providing a copy of a Federal Express air bill, contends that he sent a package of proprietary information, trade secrets, and a prototype to the DOE/NBS program on April 9, 1987, and that, despite numerous requests, neither his trade secrets nor his prototype were returned to him. *Id.* Mr. Hyde claims he lost rights to his invention because of the Government's misappropriation. *Id.* He also suspects that DOE or contractor employees sold the proprietary information, trade secrets, and prototype to a foreign country based on a note on the back of a Federal Bureau of Investigation ("FBI") record that states, "blonde could have foreign connections." *Id.*

so ever [sic] in this case" and that he would proceed pro se. Pl.'s Ans. at 1 (Apr. 7, 2008).

2. The goal of ERIP was to assess new energy-related technologies submitted to NBS and recommend the most promising inventions to DOE for possible financial support. Def.'s Mot. to Dismiss at 6.

In his complaint, Plaintiff alleges that he was able to file United States Patent No. 4,897,592 (the "Patented Invention") for an electrostatic energy field power generating system that is different from, but related to, the information he provided to the NBS. *Id.* at 3. Mr. Hyde states that he was unable to maintain a patent for the other energy technology he provided to NBS (the "Unfiled Invention") because of "DOE/NBS vicious activity." *Id.* at 3. Plaintiff demands judgment in the sum of $6.3 billion. *Id.*

On March 17, 2008, Defendant filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss at 1 (Mar. 17, 2008). Defendant contends that Plaintiff's claim is barred by the applicable statute of limitations and that Plaintiff failed to assert a cognizable patent claim. *Id.* at 3, 6. On April 12, 2008, Plaintiff stated that he was retired on Federal disability and that the applicable statute of limitations would expire three years after the cessation of that disability. Pl.'s Mot. to Clarify at 1 (April 1, 2008).

On June 20, 2008, the Court ordered the parties to file supplemental briefings addressing two specific topics related to Defendant's motion to dismiss: (1) the invention Plaintiff contended was at issue, and (2) the details regarding Plaintiff's disability that warranted tolling of the statute of limitations. June 20, 2008 Order. In his response, Mr. Hyde explained that he sent both the Patented Invention and the Unfiled Invention to NBS but that the Patented Invention "is the patent at issue in this case." Pl.'s Add. Brief at 1 (Aug. 12, 2008). Furthermore, Plaintiff stated that he suffers from Lupus Erythematosis Systemic, an autoimmune disease that has affected his mind. *Id.* Mr. Hyde added that "[t]he claim on this patent accrued January 30, 2007[sic], when the patent expired and all the events had occurred which fix liability of the Federal Government...." *Id.*

On November 4, 2008, this Court issued a second order requiring the Plaintiff to file a supplemental briefing regarding his medical disability and its impact upon his comprehension of his legal rights. Nov. 4, 2008 Order. The Court requested that Plaintiff submit evidence detailing the exact impact his disability has had on his mental state from the time he submitted his invention to the NBS in 1987 to the time he filed suit in 2008. *Id.* at 2. The order expressed a preference that this evidence be in the form of official medical documents. *Id.* On December 3, 2008, Plaintiff filed, by leave of Court, a motion to clarify this order. Plaintiff stated that he was "within the 3 year statute of limitations as [he] ha[s] a legal disability as per the Federal Government and as told to [the Court] in [his] original complaint...." Pl.'s Mot. to Clarify at 1 (Dec. 3, 2008). On December 1, 2008, the Court received a response from Defendant. The Government attached to this response a document by Plaintiff entitled "Answer for Judge Wheelers [sic] Order," dated November 11, 2008, and received by Defendant on November 19, 2008. Plaintiff's Answer, however, was not filed with the Court. In this Answer, Plaintiff explained that "doctors think that the Lupus damaged the nervous system" and that the "effect on [Plaintiff] is about the same as Autism." Def.'s Resp. (Dec. 1, 2008) at Attach. 1, Pl.'s Ans. at 1 (Nov. 11, 2008). Plaintiff continued that the doctors "don't know for sure" and that he did not "have the doctor or money to get one to meet [the Court's] medical requirements." *Id.* In the same document, Plaintiff explained that his complaint "has always been 5th Amendment taking...." *Id.*

Since filing his complaint in January 2008, Plaintiff has submitted thirty motions to this Court, including motions for summary judgment, default, declaratory judgment, removal of the Department of Justice, and removal of Defendant's counsel.

## Discussion

### A. *Standard of Review*

"Subject matter jurisdiction must be established before the Court may proceed to the merits of any action." *BearingPoint, Inc. v. United States,* 77 Fed.Cl. 189, 193 (2007) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). "The party asserting the Court's jurisdiction bears the burden of

proof on jurisdictional issues." *Id.* (citation omitted).

Under RCFC 12(b)(1), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter. When considering a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true the undisputed allegations in the complaint, and draws all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Hamlet v. United States,* 873 F.2d 1414, 1415–16 (Fed.Cir. 1989). This court will dismiss for lack of subject matter jurisdiction only where it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Frymire v. United States,* 51 Fed.Cl. 450, 454 (2002) (citing *Davis v. Monroe County Bd. of Educ.,* 526, U.S. 629, 654, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

*Pro se* litigants are afforded considerable leeway in presenting their pleadings to the Court. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, L.Ed.2d 652 (1972) (explaining that pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers"). This broad latitude afforded pro se litigants does not, however, exempt them from meeting this Court's jurisdictional requirements. *See Henke v. United States,* 60 F.3d 795, 799 (Fed.Cir.1995). Pro se plaintiffs still have the burden of establishing subject matter jurisdiction. *Tindle v. United States,* 56 Fed.Cl. 337, 341 (2003). Further, there is no duty for a court to create any claims that are not spelled out in Plaintiff's pleading. *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (citation omitted).

### B. *Plaintiff's Claims*

Plaintiff filed the present action under the Nature–of–Suit Code "508 Patent," indicating a patent claim. Compl. at 4. While the complaint alleges theft of a single prototype, it mentions both the Patented Invention and the Unfiled Invention and does not indicate which invention is the subject of Plaintiff's

claim. *Id.* at 3. In response to a request from this Court, Plaintiff explained that he sent both the Patented Invention and the Unfiled Invention to NBS but that the Patented Invention "is the patent at issue in this case." Pl.'s Add. Brief at 1 (Jul. 29, 2008). However, liberally construed, Mr. Hyde's complaint alleges patent claims for both the Patented Invention and the Unfiled Invention.

Further, Plaintiff's complaint states that "the Constitution mandates just compensation for all the property." Compl. at 3. Mr. Hyde's complaint thus could be read to assert a Fifth Amendment takings claim. In his November 11, 2008 Answer sent to Defendant, Plaintiff stated that he asserted such a claim. Def.'s Resp. (Dec. 1, 2008) at Attach. 1, Pl.'s Ans. at 1 (Nov. 11, 2008) (explaining that the Complaint "has always been 5th Amendment taking").

### C. *The Court Lacks Subject Matter Jurisdiction to Hear Plaintiff's Claims.*

#### 1. *Plaintiff Failed to File His Claims Within the Applicable Statute of Limitations.*

Plaintiff failed to file his complaint within the statute of limitations period. Under 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." This statute of limitations is jurisdictional in nature. *John R. Sand & Gravel Co. v. United States,* —— U.S. ——, 128 S.Ct. 750, 753–55, 169 L.Ed.2d 591 (2008). A claim against the United States begins to accrue "when all the events occurred which fix the liability of the Government and entitle the claimant to institute an action...." *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988) (quoting *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225 (1964)).

Here, Plaintiff's claim began to accrue at the earliest in the late 1980s when his requests for the return of his prototype were ignored and at the latest, in October 16, 1991, when Plaintiff communicated his concerns regarding his missing inventions in a letter to

the Assistant United States Attorney ("AUSA") in the District of Idaho. Compl. at 2, 7. Thus, Plaintiff's claim, without any applicable exception, would have expired at the latest, on October 16, 1997, well before he filed this case in 2008.

Plaintiff contends, however, that his complaint is timely because he suffers from a legal disability and thus could file within three years after his disability ceases. *See* Pl.'s Mot. to Clarify (Apr. 1, 2008). Mr. Hyde explains that he suffers from Lupus, an autoimmune disease that has affected his mind, Pl.'s Add. Brief at 1 (Aug. 12, 2008), and states that he was placed on physical disability by Federal Government order on October 10, 1979, Compl. at 2. Plaintiff further argues that the cases Defendant cited for support do not "even mention legal disability or mental illness." Pl.'s Resp. at 1 (Dec. 16, 2008).

■■■ Plaintiff's understanding of the law, as well as his interpretation of the cases cited by Defendant, is mistaken. It is true that "[a] petition on the claim of a person under legal disability ... at the time the claim accrues may be filed within three years after the disability ceases." 28 U.S.C. § 2501. However, being placed on disability from work by the Federal Government does not automatically indicate a "legal disability" under 28 U.S.C. § 2501. Rather, the legal disability must impair the claimant's access to the court in order to toll the statute of limitations. *Bond v. United States*, 43 Fed. Cl. 346, 349 (1999) (citing *Bennett v. United States*, 36 Fed.Cl. 111, 113 (1996)). The disability must have prevented the plaintiff from comprehending his or her legal rights. *Bennett*, 36 Fed.Cl. at 113 ("Such an impediment 'should require a mental derangement precluding a person from comprehending rights which he would otherwise be bound to understand.' ") (citing *Goewey v. United States*, 222 Ct.Cl. 104, 114, 612 F.2d 539 (1979)). The disability must be continuous in nature and the statute of limitations will recommence if the plaintiff experiences a non-disabling period. *Bond*, 43 Fed.Cl. at 349 (citing *Waldorf v. United States*, 8 Cl.Ct. 321, 324 (1985) and *Coon v. United States*, 30 Fed.Cl. 531, 539 (1994)). This Court cannot

presume that a plaintiff suffered from such a disability. *Bennett*, 36 Fed.Cl. at 113. (citing *Coon*, 30 Fed.Cl. at 539). Rather, a plaintiff has the burden of demonstrating the existence of such a disability. *Id.* Thus, a plaintiff, to be entitled to a tolling of his statute of limitations, must present evidence of the existence of such a disability. *See id.*

■■■ Plaintiff, however, has not met the burden of demonstrating the existence of a legal disability that impaired his ability to file a claim within the statute of limitations. When this Court requested that Mr. Hyde provide probative evidence of such a disability, Plaintiff repeated that he suffered from "a legal disability as per the Federal Government and as told to [the Court] in [his] original complaint...." Pl.'s Motion to Clarify at 1 (Dec. 3, 2008). While in a filing sent only to Defendant Plaintiff explained that "doctors think that the Lupus damaged the nervous system" and that the "effect on [Plaintiff] is about the same as Autism," Plaintiff continued that the doctors "don't know for sure" and that he didn't "have the doctor or money to get one to meet [the Court's] medical requirements." Def.'s Resp. (Dec. 1, 2008) at Attach 1, Pl.'s Ans. (Nov. 11, 2008). Plaintiff, however, has not put forth any evidence establishing that he has, or has had, a disability that impaired his ability to file a claim within the statute of limitations.

In fact, the evidence shows that Mr. Hyde comprehended his legal rights during the time that the statute of limitations was running. It is apparent that, as early as January, 1988, Mr. Hyde was aware of the facts surrounding his claim and sought to pursue his rights against the Government. During that month, Plaintiff contacted the FBI alleging that NBS released information regarding an invention he submitted to the agency for evaluation. Compl. at 2, 9 (Letter from Toby M. Harding, FBI, to a redacted individual, DOE, Mar. 17, 1988). The FBI referred the matter to an AUSA, *id.* at 9, and Mr. Hyde continued to assert his rights before the Government. Specifically, on October 16, 1991, Plaintiff sent a letter to the AUSA explaining that his "proprietary information was in the possession of and responsibility of the federal

government...." Compl. at 7. Mr. Hyde requested that the Government uphold its commitment and explained that "[he] ha[s] all the physical evidence and witnesses...." *Id.;* *see also* Pl.'s Mot. to Clarify (Apr. 1, 2008) ("I went to great lengths to find [the invention] notifying the FBI, U.S. Attorney, and just about every official in Washington D.C. [sic] including every president."). As Plaintiff repeatedly sought action from the Government regarding his allegedly lost patents, it is apparent that he understood his legal rights as early as January 1988, or, at the very least, experienced non-disabling moments in 1988 and 1991.

Plaintiff has failed to meet his burden of demonstrating the existence of a disability entitling him to tolling of the statute of limitations. Plaintiff's complaint is therefore untimely and this Court does not have subject matter jurisdiction to hear Plaintiff's patent or takings claims.

### 2. The Court Has No Subject Matter Jurisdiction Over Plaintiff's Patent Claims.

Even if Plaintiff's complaint was timely filed, dismissal of Plaintiff's patent claim is appropriate because this Court does not have subject matter jurisdiction to hear claims involving either of his inventions.

■ The Tucker Act confers upon this Court jurisdiction to hear claims against the United States "founded either upon the constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages...." 28 U.S.C § 1491(a)(1). Such claims cannot sound in tort. *Id.; see also Schillinger v. United States,* 155 U.S. 163, 167–68, 30 Ct.Cl. 480, 15 S.Ct. 85, 86, 39 L.Ed. 108 (1894). This Act, however, "does not create any substantive right enforceable against the United States for money damages[;] ... the Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (citation omitted). A plaintiff coming before this Court, therefore, must identify a separate provision of law conferring a substantive right for money damages against the United States. *See Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (citation omitted).

■ Regarding patents, this Court has jurisdiction to hear claims alleging that a United States patent was used or manufactured by, or on behalf of, the United States without the permission of the patent holder:

> [w]henever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C. § 1498(a).

Regardless of whether Mr. Hyde's complaint is construed to allege loss of either or both the Patented Invention and the Unfiled Invention, this Court does not have subject matter jurisdiction to hear his claim. Mr. Hyde does not allege that either invention was "used or manufactured by or for the United States." Rather, Plaintiff alleges that the United States accepted his invention and never returned it to him. Compl. at 2. Mr. Hyde suspects that DOE or contractor employees sold the proprietary information, trade secrets, and prototype to a foreign country. *Id.* Plaintiff alleges torts, and such actions are not within the Court's jurisdiction. 28 U.S.C § 1491(a)(1); *Schillinger,* 155 U.S. at 167–68, 15 S.Ct. 85. Thus, dismissal of Plaintiff's patent claims for lack of subject matter jurisdiction is appropriate.

Further, in regard to the Unfiled Invention, dismissal for a lack of subject matter jurisdiction is also appropriate because this invention is not covered by a United States patent. As noted above, 28 U.S.C. § 1498(a) grants this Court jurisdiction to hear cases involving inventions that are "described in and covered by a patent of the United States." As Mr. Hyde's Unfiled Invention is not covered by a United States patent, *see* Compl. at 2, this Court does not have jurisdiction to hear claims regarding it. *See* 28

U.S.C. § 1498(a); *see also Foster v. United States,* 230 Ct.Cl. 938, 938 (1982) (permitting plaintiff to dismiss without prejudice patent infringement claims in which the plaintiff only had pending patent applications until the patents were validly issued); *Fulmer v. United States,* 144 Ct.Cl. 812, 838 (1959) (in a Congressional reference matter, stating that U.S. Court of Claims has no jurisdiction under 28 U.S.C. § 1498 to hear patent infringement claims in the absence of patents); *Patton v. United States,* 110 Ct.Cl. 195, 202, 75 F.Supp. 470 (1948) ("[U]ntil a patent has been granted and issued by the Patent Office [the Court of Claims] has no jurisdiction to review for compensation for the unauthorized use of the claimed invention.").

### D. *Failure to State a Claim Upon Which Relief Can be Granted*

Defendant also seeks dismissal of Plaintiff's claims under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted. Given that this Court does not have jurisdiction to hear Plaintiff's takings and patent claims, the Court need not consider this position.

### E. *Plaintiff's Motions*

As this Court does not have subject matter jurisdiction to hear Plaintiff's claims, Plaintiff's thirty pending motions are hereby DENIED.

### Conclusion

Based upon the forgoing, Defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED. The Clerk is directed to dismiss Plaintiff's complaint with prejudice.

IT IS SO ORDERED.